Robert J. WILSON, Trustee, Appellant,

v.

Allan R. KLEIN, Appellee.

No. 14386.

Court of Appeals of Texas, Austin.

Aug. 13, 1986.

Rehearing Denied Sept. 24, 1986.

Scott R. Kidd, Brown, Maroney, Rose, Barber & Dye, Austin, for appellant.

Paul W. Nimmons, Jr., Houston, for appellee.

Before POWERS, EARL W. SMITH and CARROLL, JJ.

POWERS, Justice.

Robert J. Wilson appeals from the trial court's judgment, rendered after a non-jury trial, that Wilson take nothing by his suit for specific performance against Allan R. Klein. The judgment also sustains Klein's counterclaim against Wilson for liquidated damages, and Wilson appeals as well from that part of the judgment below. We will affirm in all respects the judgment of the trial court.

## THE CONTROVERSY

Wilson contracted to purchase from Klein certain tracts of land in Travis County, Texas. The pertinent parts of the contract provide as follows:

\* \* \* \* \* \*

1. The undersigned Allan R. Klein, Trustee (hereinafter called Seller) hereby agrees to sell and convey unto the undersigned, ROBERT J. WILSON [,] Trustee [,] or assigns ... (hereinafter called Purchaser) and Purchaser agrees to buy, upon the terms and conditions herein contained, the following described property....

TRACT 1: ALL OF SILENT RIDGE SUBDIVISION, SAVE AND EXCEPT [two lots described by reference to the records of a law suit], ... a subdivision in Travis County, Texas, according to the map or plat thereof, recorded in Volume 77, Page 29 of the Plat Records of Travis County, Texas

TRACT 2: All of COMMANDER'S POINT SUBDIVISION, SAVE AND EXCEPT Lot 19 thereof, a subdivision in Travis County, Texas, according to the map or plat thereof, recorded in Volume 63, Page 15, Plat Records of Travis County, Texas [; and,] save and except Sunday House Subdivision

TRACT 3: Lots 43A and 44A, RALPH WHITE ADDITION, a subdivision in Travis County, Texas, according to the map or plat thereof, recorded in Volume 75, Page 86, Plat Records of Travis County, Texas

TRACT 4: 29.696 acres as described more fully in a Deed recorded in Volume 5937, Page 879, Deed Records in Travis County, Texas, said Deed being incorporated by reference herein for all purposes

TRACT 5: 5.914 acres as described more fully in a Deed recorded in Volume 6769, Page 384, Deed Records of Travis County, Texas, said Deed being incorporated by reference for all purposes

and all other adjacent property owned by Seller in Travis County, Texas, within ¼ mile radius of the Property that may be shown on survey hereinafter provided for, together with all and singular the rights and appurtenances pertaining to the property, *including any right, title and interest of Seller in and to adjacent streets, alleys or rights-of-way* (all of such real property, rights and appurtenances being hereinafter referred to as "the Property"), together with any improvements, fixtures and personal property situated on and attached to the Property, for the consideration and upon and subject to the terms, provisions and conditions hereinafter set forth, the correct legal description will be determined from the survey hereinafter provided for.

2. Seller has insisted that Purchaser convey like-kind property under Section 1031 IRC to Seller as the consideration for this sale. However, Purchaser does not have such like-kind property. Therefore, in order to enable Seller to obtain the benefits of Section 1031 IRC, Purchaser and Seller agree that the total consideration will be paid in cash as calculated below but will be paid by Purchaser to a trustee under an Exchange Trust Agreement....

Notwithstanding the foregoing, if the survey of the property to be furnished by Seller to Purchaser, as hereinafter provided, reflects that the number of acres comprising the property is more or less than forty (40) acres as to Tracts 1, 2, 3, and 5, the purchase price is to be increased or reduced by the product of $18,000.00 times the number of acres of the Property more or less than forty (40). If said survey reflects that the number of acres is more or less than thirty (30) as to Tract 4, the purchase price is to be increased or reduced by the product of $15,000.00 times the number of acres of Tract 4 more or less than thirty. *Land subject to easement will not be deducted from total acreage in calculating the purchase price.*

\*　　\*　　\*　　\*　　\*　　\*

4. [Seller shall deliver a survey of the property] *showing the area in acres of each separate tract and the whole tract* by Billy Priest, Surveyor, or a surveyor of Seller's choice.... If the Survey is sufficient to permit the above Title Company [mentioned in section 3] to modify the standard printed exceptions in the Owner's Policy of Title Insurance pertaining to discrepancies, conflicts and shortages in area or boundary lines, encroachments and overlapping of improvements, by deleting all existing language therein *except* "shortages in area," and *locates* all streets, roads, fences, easements and rights-of-way on or immediately adjacent to the Property, if any, and staked and iron pinned on the ground, then the Survey shall be sufficient for all purposes of this Contract. If the Survey is insufficient to permit the above Title Company to modify the exception as stated above, then Purchaser shall have [an opportunity to cure]....

(emphasis added). We shall briefly analyze each of these three sections.

*Section One* has the manifest purpose of identifying in gross the property that is the subject of the contract. The property falls into three categories: (a) the land in two recorded "subdivisions" and one "addi-

tion," together with tracts of 29.696 and 5.914 acres, all identified solely in gross and by reference to recorded instruments; (b) adjacent property owned by the seller within one-quarter mile, including his right, title, and interest in adjacent streets, alleys, and rights-of-way; and (c) improvements, fixtures, and personal property on or attached to the property. Section One concludes with the statement that the sale and promised conveyance is

for the consideration and upon and subject to the terms, provisions and conditions hereinafter set forth, the correct legal description [to be] determined from the survey hereinafter provided for.

From these provisions in Section One, it is evident that the parties could describe the land only in gross at the time of contracting; that Klein, the seller, was obliged to convey by quitclaim his interests in any adjacent roadways; and that "the correct legal description" would be determined from the survey mentioned in a subsequent part of the contract.

*Section Two* has the obvious purpose of establishing the purchase price of the property. Curiously, the contract does not expressly state the basic contract price ($1,170,000) alleged by Wilson in his trial petition for specific performance, or any other basic contract price. Rather, that basic price is *implied* by the provision in Section Two which combines the five tracts of land into two parcels and assigns each parcel a quantity of land and a basic contract price per acre:

| | | | |
|---|---|---|---|
| Tracts 1, 2, 3, and 5: | 40 acres × $18,000 | = | $ 720,000 |
| Tract 4: | 30 acres × $15,000 | = | $ 450,000 |
| Total | | | $1,170,000 |

Of primary importance to the appeal is the fact that in Section Two the parties agreed that the basic contract price for each of the two parcels should be adjusted, using the assigned price per acre, according to whether the survey revealed that the first parcel contained "more or less than forty"

acres or whether the second parcel contained "more or less than thirty" acres.

*Section Four* of the contract requires that Klein deliver to Wilson the survey mentioned in Section Two, "showing the area in acres of each separate tract and the whole tract ... [and locating] ... all streets, roads, fences, easements and rights-of-way on or immediately adjacent to the Property...." Section Four lists certain other requisites of the survey, but none of them require a survey showing the acreage covered by dedicated roadways, even though the locations of such roadways are required to be shown. This is in marked distinction from the requirement in Section Four that the "area in acres" be shown for "each separate tract and the whole tract...."

Having in mind the three pertinent provisions of the contract, we turn then to this issue: Does the contract language reveal an intention that Wilson pay for that part of the land conveyed to him which lies within dedicated roadways, at the stipulated $18,000 per acre? (The evidence is to the effect that the only dedicated roadways lie within the boundaries of the first parcel comprised of Tracts 1, 2, 3, and 5, having an assigned price of $18,000 per acre. The second parcel, composed of Tract 4 and having an assigned price of $15,000, has an undedicated easement way across it but no dedicated roadways.)

The controlling facts are undisputed:[1]

1. Klein engaged a surveyor who delivered to Wilson, before showing them to Klein, the newly prepared field notes and plat.

2. The field notes and plat showed that 6.60 acres of the property lay within the bounds of dedicated roadways.

3. A dispute arose between Klein and Wilson as to the meaning of that part of their contract which provided for the calculation of the purchase price, Klein contending that Wilson was obligated to pay for the 6.60 acres at the rate of $18,000 per acre and Wilson contending that he was entitled to receive conveyance of the 6.60 acres without payment therefor.

4. Klein's obligation to convey the property and Wilson's obligation to pay the purchase price were reciprocal and mutually dependent obligations to be performed, under the contract, at the "closing."

5. Klein was at all times willing to convey the property, and offered timely to do so, in exchange for a purchase price that included payment for the land within the dedicated roadways.

6. Wilson was at all times willing to pay a purchase price calculated on the basis

---

1. The trial court filed findings of fact and conclusions of law. Interestingly, Wilson does not challenge any of the findings of fact as being without sufficient support in the evidence. He is in consequence bound thereby, although he attempts in argument to advance certain factual propositions that are contrary to the trial court's findings. For example, he suggests in various ways that a second survey furnished him by Klein's chosen surveyor was binding in some manner upon Klein in the matter of whether the roadway acreage should be included in calculating the adjusted purchase price. However, the trial court explicitly found that:

\* \* \* \* \* \*

2. [The] surveyor did not have actual or apparent authority to bind [Klein] to a total acreage calculation that was inconsistent with the contract.

\* \* \* \* \* \*

4. [Klein] did not, by choosing the surveyor or by any other act or omission with respect to the first survey, either agree to modify the purchase price provisions of the contract or agree to relinquish the right to receive the full purchase price provided by the contract.

5. [W]ithin a reasonable time, on October 31, 1983, [Klein] arranged to have prepared and delivered to [Wilson] a survey showing the correct total acreage.

\* \* \* \* \* \*

Wilson's neglect to challenge any of the trial court's findings is understandable for it appears the controlling facts are really undisputed and the dispositive issues present only questions of law: (1) what was the purchase price required by the parties' contract; and, (2) if it included payment for the roadways, did Wilson make a legally sufficient tender of that sum? Wilson's first five points of error depend upon these questions of law; his last four points of error are directed at the trial court's judgment awarding Klein liquidated damages.

that payment was not required for such roadways.

7. Wilson, to this date, has never made *actual* tender of an amount that included payment for the dedicated roadways.

8. Wilson, when he sued for specific performance in the present case, offered in his pleading to pay a price that included payment for the roadways *if* it be judicially determined that such is the purchase price mandated by his contract with Klein, thereby making a *constructive* and conditional tender of that amount.

9. The contract expressly provided that time was "of the essence" of the parties' respective contract rights and obligations.

10. The sole dispute between the parties, in the matter of specific performance, is whether the purchase price mandated by the contract includes payment for the 6.60 acres lying within dedicated roadways.

We shall discuss in turn Wilson's appeal from (1) the trial court's judgment that he take nothing by his suit for specific performance, and (2) its judgment awarding Klein liquidated damages in his counterclaim therefor.

## WILSON'S SUIT FOR SPECIFIC PERFORMANCE

Wilson brings five points of error that depend ultimately upon the following two issues: (1) did the parties' contract provide for an adjusted purchase price that excluded any obligation in Wilson to pay for the 6.60 acres lying within the bounds of dedicated roadways; and (2) even if the contract called for an adjusted purchase price that included payment for such 6.60 acres, was Wilson's *constructive* tender of that sum legally sufficient to satisfy the "tender" prerequisite to an award of the remedy of specific performance? An affirmative answer to *either* issue would entitle Wilson to a judgment of reversal. We conclude, however, that the answer to both is "no."

We should observe generally that the remedy of specific performance is not merely a judicial fiat issuing from and governed by the judge's personal conscience, or his emotional feeling about what is "fair," "just," and "right" in the totality of the circumstances. Instead, the equitable remedy is issuable only under and according to rules that are quite explicit and well-established. It is the enforcement of these rules that produces "equity." We believe the trial court unquestionably applied correctly the rules of equity applicable to the case.

*The Adjusted Purchase Price Contemplated by the Contract Required Payment for the Acreage Within Dedicated Roadways*

■ We hold the contract required Wilson to pay for the acreage (6.60 acres) lying within the dedicated roadways. Our construction of the contract is based upon the following rationale.

First, there is no contract language that expressly provides or fairly implies that Wilson need not pay for such acreage, even though the contract explicitly requires Klein to convey it to Wilson. Wilson relies upon the provision that "[l]and subject to easement will not be deducted from total acreage in calculating the purchase price." This sentence is, however, a negative pronouncement *against* one possible deduction from the basic contract price of $1,170,000. It may not logically be converted into an affirmative declaration in *favor* of *any* deduction. Wilson argues that it *implies* that the parties contemplated a deduction for dedicated roadways, for in other contract language (where the parties' agreed that the survey must locate "all streets, roads, fences, easements and rights of way") the parties "clearly" considered streets and roads "to be something separate and apart from easements, and only easements were to be included in the acreage calculation." We are aware of no such rule of construction as that suggested by Wilson.[2] Quite simply, the contract does

2. Our statement should not be taken as refer- ring to the familiar rule of contract construction

not authorize *any* deduction from the acreage calculation—for roadways, easements, or anything beyond a difference in acreage from the 40 and 30–acre quantities assigned the two parcels. The silence of the contract is most expressive of the parties' intention and it is contrary to Wilson's theory.

■ Second, the contract mechanism for arriving at the adjusted purchase price implies that the parties had a contrary intention. As mentioned above, the contract assigns to each of the two parcels an acreage quantity (40 and 30 acres) and a price-per-acre ($18,000 for the first parcel and $15,000 for the second), with a proviso that the purchase price for the parcels should be determined according to whether the survey showed that the parcels contained "more or less" than the assigned quantity. Normally, where a specific quantity of land is conveyed and described, followed by the expression "more or less," it implies that a *reasonable* deficit or excess is within the expectations of the parties and will not constitute grounds in equity for relief from their obligations. *Sims v. Haggard,* 346 S.W.2d 110 (Tex.1961). In our view, the same principle is involved in the present contract. The survey shows that the first parcel, to which the parties assigned a quantity of 40 acres, actually contained 40.-402 acres if the roadways be included and only 33.802 acres if they be excluded in calculating the adjusted purchase price. If the parties intended that the roadways be included, they contemplated that an adjust-

ment in the range of about *one percent* should not affect their contract obligations, which is within the de minimis principle mentioned above. On the other hand, if the roadways be excluded, the difference amounts to about *15 percent,* and in our view a difference of this magnitude makes it doubtful that the parties intended that it should not affect their obligations, at least in the absence of other language making that intention more likely. It appears rather that the acreage assigned the two parcels in the contract (40 acres for the first parcel and 30 acres for the second, the latter being shown to contain 29.45 acres) were genuine estimates by contracting parties who desired to buy and sell the land on an acreage basis when they were able to describe the land only in gross, owing to a lack of knowledge at the time of contracting about the exact acreage contained in each of the five tracts.

Third, the requisites prescribed by the contract for the survey defeat the theory advanced by Wilson. Section Four of the contract required that Klein deliver to Wilson a survey having specified particulars, such as "the area in acres of each separate tract and the whole tract" and the location of "all streets, roads, fences, easements and rights-of-way...." *Klein was not contractually obligated to deliver a survey showing the acreage lying within dedicated roadways.* Hence, the survey required of Klein would not permit the operation of the adjustment formula specified in

---

contemplated in the maxim "expressio unius est exclusio alterius," or the expression of one thing is the exclusion of another. That rule of construction ordinarily contemplates that the mention of one or more things *in a class* narrows the scope of the class to the specifically named thing or things, by excluding the remaining things *in the class* which would otherwise have been included therein. *First National Bank of Luling v. Nugent,* 384 S.W.2d 224 (Tex.Civ.App. 1964, writ ref'd n.r.e.).

In the present case, the contract does not contemplate *a class* of deductions in computing the adjusted purchase price.

Moreover, Wilson stands the maxim on its head so that it becomes meaningless, for the substance of his position is that the express *prohibition* of one deduction from the basic contract

price (easement acreage shall not be deducted) *enlarges* by implication a supposed (but unidentified) class of things that *are* to be deducted therefrom. This is contrary to the purpose and theory of the maxim, which is ordinarily "to control, limit, or restrain the otherwise implied effect of an instrument, and not to 'annex incidents to written contracts in matters with respect to which they are silent.'" *Morrow v. Morgan,* 48 Tex. 304, 308 (1877). Finally, for the maxim to be applicable at all in the present case, the contract would have had to expressly provide that one thing in a class of deductions (easement ways, for example) was *allowable.* Under the maxim, this then would have impliedly *excluded* the idea that the parties contemplated deductions attributable to any other thing in the class (dedicated roadways, for example).

Section Two, under Wilson's interpretation that it contemplates a deduction for such roadways. Really, then, Wilson argues (1) that we should impute to Section Four a requirement that Klein furnish a survey showing the acreage covered by dedicated roadways *and* (2) that we should impute to Section Two a deduction from the purchase price for such acreage, at the rate of $18,-000 per acre. *Neither* imputation is justified by the contract language. So far as we are able to tell, Wilson's contentions are nothing more than *a priori* arguments.

Consequently, we hold that the contract called for Wilson to pay for the 6.60 acres lying within the dedicated roadways; and, it necessarily follows that he never actually tendered the correct purchase price. We turn then to his alternative contention that constructive tender of that amount was legally sufficient.

*An Actual Tender of the Correct Purchase Price Was Required of Wilson as a Prerequisite for Specific Performance*

■ We hold that an actual tender was required of Wilson because the contract in question provided expressly and unequivocally that time was "of the essence." More specifically, the time specified in the contract for performance of its terms was an essential and limiting element of the parties' contract or *legal* rights and obligations, and therefore of their *equitable* rights and obligations and Wilson's *equitable* estate in the land, created in him by the very contract which imposed the limiting element.

■ We should first specify the meaning and purpose of the "tender" requirement in suits for specific performance. In the present context, the word "tender" generally implies *an unconditional* offer by an obligor to pay a sum *not less than what is due* his obligee. *Baucum v. Great American Ins. Co. of N.Y.*, 370 S.W.2d 863 (Tex.1963). The general rule is that an *actual* or *literal* production of the thing to be delivered is required, coupled with a relinquishment of it for a sufficient period of time to enable the obligee to reduce it to possession if he so desires. *Richey v. Stanley*, 38 S.W.2d 1104 (Tex.Civ.App.1931, no writ). When money is the thing required to be delivered by the obligor, as in the present case, the offer of a sum less than what is due does *not* constitute a "tender." It is the obligor's *duty to make certain* that his tender is sufficient in amount. It is ordinarily immaterial that *he did not know* the correct amount or that *he believed* the amount offered was sufficient to discharge his obligation. *He acts in this respect at his peril.* *Early Grain & Seed Co. v. McCallum*, 128 S.W.2d 469 (Tex.Civ.App.1939, no writ).

■ Thus the very definition of "tender" does not even allow for the possibility of *conditional* offers. There is, however, this exception to the general rule: the obligor's tender may be valid, even though made upon a condition, *provided* the condition is one he had a right to impose; conversely, if no such right existed, his conditional offer was never a "tender." *Adolph Flake & Co. v. Nuse*, 51 Tex. 98 (1879); *Engelbach v. Simpson*, 12 Tex.Civ.App. 188, 33 S.W. 596 (1896, no writ).

In cases such as the present, where the seller's and buyer's contract obligations are mutual and dependent, in that a deed is required to be delivered upon tender of the purchase price, the *purpose* of a tender is two-fold: (1) a valid tender of the purchase price invokes the seller's obligation to convey and places him in default if he fails to do so; and (2) the tender satisfies the fundamental prerequisite of specific performance—that the buyer show that he has done or offered to do, or is then ready and willing to do, all the essential and material acts which the contract requires of him. 4 Pomeroy's Equity Jurisprudence § 1407, p. 1050 (5th ed. 1941); 17 Am.Jur.2d §§ 63, 64, pp. 91–92 (1973); annot., 79 A.L.R. 1240 (1932).

We must therefore consider under what particular circumstances an actual tender is required; or, stated otherwise, when a constructive tender will or will not suffice.

■ Generally speaking, it is a prerequisite to the equitable remedy of specific performance that the buyer of land shall have made an actual tender of the purchase price—an unconditional offer to pay a sum not less than what the contract requires. Pomeroy, *supra*. But because the proceeding is equitable in nature, this requirement is forgiven and a constructive tender will suffice when the acts of the defendant or the situation of the property is such that an actual tender would have been a *useless act*, an *idle ceremony*, or *wholly nugatory*. Pomeroy, *supra*. For example, actual tender by a buyer was unnecessary when the seller had conveyed the property to a third person, placing the seller in default of his contract with the buyer. *Burford v. Pounders*, 145 Tex. 460, 199 S.W.2d 141 (1947). Similarly, actual tender was not required when the seller had defaulted on his contract obligation to cure defects in his title and the cost of curing them was uncertain, so that the contract price called for in such contingency could not be calculated, it being impossible to tender an unliquidated sum. *McMillan v. Smith*, 363 S.W.2d 437 (Tex.1963). In such cases, it is sufficient that the buyer was ready and willing to do all the essential and material acts required of him by the contract *and that he offered to do so in his pleading for specific performance*. In other words, the buyer's constructive "tender" is sufficient in such cases. Klein has made only a constructive tender in the present case; but, as we shall see, this is *not* a case where constructive tender will suffice because it is *undisputed* that an actual tender would *not* have been a useless act, an idle ceremony, or wholly nugatory.

■ There is a *more particular* rule that applies where the parties have stipulated in their contract, as they have here, that time is "of the essence" of their contract rights and obligations, and of any equitable estate created therein. In such cases, the buyer "must make an actual tender of the price and demand of the deed" *within the time allowed by the contract*. 4 Pomeroy, *supra*, at 1052. "Where time is of the essence of a con-

tract, a party must perform or tender performance in strict compliance with the provisions of the contract *within the time prescribed*, in order to entitle him to specific performance." *Liedeker v. Grossman*, 146 Tex. 308, 206 S.W.2d 232, 234–35 (1947) (emphasis added).

In summary, there is no general rule to the effect that constructive tender is always sufficient in a suit for specific performance because courts of equity "have not been bound by strict and inflexible rules." *McMillan v. Smith, supra*, at 442. As stated in the *McMillan* case, there is, instead, "a "well-recognized *exception* to the rule that a purchaser, to obtain specific performance, must have made a correct tender to the seller." *Id.* (emphasis added). The exception is where actual tender would be a useless act, an idle ceremony or wholly nugatory, as in *McMillan* where the seller failed or refused to cure defects in his title, rendering impossible any calculation of the contract price. In such cases, a constructive tender will suffice *unless* the parties have stipulated that time is "of the essence." They did so stipulate in the present case.

We shall therefore apply the foregoing rules of equity to the present controversy. As we have held above, the purchase price mandated by the contract was one which included payment for the dedicated roadways. The resulting sum is easily calculable and has never been disputed as to the amount. Rather, the parties disagreed solely on *whether* the contract *required* payment for such roadways—a question of law.

We hold an actual tender was required of Wilson and his constructive tender was insufficient to place Klein in default. Because Wilson never tendered the correct sum, Klein's contract obligation to make conveyance never ripened into a legal or equitable obligation to do so, the latter being an obligation enforceable by specific performance.

■ It is *undisputed* that Klein was always ready and willing to make convey-

ance on tender to him of purchase price which included payment for the roadways. Under such evidence, it may not reasonably be concluded that Wilson's unconditional offer of the correct amount would have been a useless act, an idle ceremony, or wholly nugatory—this then is not a case where actual tender was excused. It being undisputed also that Wilson never made an actual tender—an unconditional offer to pay the correct amount—Wilson was not entitled to specific performance. *McMillan v. Smith, supra.* It was Wilson's right to tender the amount demanded by Klein, the legally correct amount under our interpretation of the contract, and *then* litigate about the correctness of that price under the proper interpretation of the contract. He offered a lesser sum *at his peril*, insofar as his right to specific performance is concerned. *Baucum v. Great American Ins. Co. of N.Y., supra; Early Grain & Seed Co. v. McCallum, supra.*

Lastly, and most particularly, Wilson was not entitled to specific performance unless he made an actual tender, as opposed to a constructive tender in his pleading for specific performance, because the parties' contract expressly stipulated that timeliness was *essential* to any right and obligation arising from the contract and an *essential*, limiting aspect of the equitable estate created in Wilson by the contract terms. *Liedeker v. Grossman, supra; Ratcliffe v. Mahres,* 122 S.W.2d 718 (Tex. Civ.App.1938, writ ref'd); 4 Pomeroy, *supra,* § 1407a, p. 1052. It is undisputed that Wilson never made an actual tender within the time permitted by his contract, or even subsequently. He was therefore not entitled to specific performance of that contract. A contrary holding would continue the contract several years past the time required for the parties' performance, notwithstanding that *they* stipulated that timeliness was an *essential* aspect of any obligation, right, or estate created in the contract. We may not destroy this bargained-for stipulation. Otherwise, Wilson would obtain a valuable contract right for which he had not paid consideration and Klein's property would be burdened by a contract

right for which he received no consideration. We would be doing nothing more than making a *new* contract for the parties—and one contrary to their express stipulation concerning the matter of timeliness.

Wilson's constructive tender being legally insufficient, we affirm the trial-court judgment insofar as it denies him specific performance of his contract with Klein.

### KLEIN'S SUIT FOR LIQUIDATED DAMAGES

Klein counterclaimed against Wilson for liquidated damages that he contended were agreed upon by the parties in their contract. Section 6 of the contract provides:

As earnest money Purchaser has this day placed the sum of $20,000.00 together with a copy of this agreement in escrow with the ... Title Company. Should the terms of this agreement be carried out within the time specified, said sum shall be applied to the cash consideration for the conveyance of the above property. *Should Purchaser fail to consummate this agreement within the time specified herein, Seller shall have the right to said sum as liquidated damages or sue for specific performance.* If Seller fails to comply with the terms of this contract for any reason except Seller's failure to furnish good and marketable title or sufficient survey as above set out, Purchaser shall have the right to receive back the earnest money or sue for specific performance. Both parties agree that actual damages would be extremely difficult or impossible to prove and that liquidated damages in the amount of the earnest money is fair and equitable.

(emphasis added.) Wilson contends in four points of error that the trial court erred in awarding Klein the liquidated damages and associated attorneys fees. Under each point, Wilson argues the awards were error because: (1) it was not shown that Wilson breached the contract; and (2) Klein did not tender performance in a timely manner, in

a contract that specified time was "of the essence," for the stipulated "closing" date was October 9, 1983 and Klein did not tender performance until November 14, 1983.

 We must hold, of course, that Wilson breached the contract because *he* failed to make actual tender of the correct purchase price at the closing. In consequence, tender by Klein was not required as discussed previously in this opinion. We therefore affirm the judgment of the trial court in its award of liquidated damages and attorneys fees on Klein's counterclaim.

Finding no error as assigned by Wilson, we affirm the judgment below in all respects.

CARROLL, Justice, dissenting.

I respectfully dissent. Wilson brought nine points of error on appeal. In points one and two, he contended generally that the trial court erroneously interpreted the contract to require that the acreage within the roadways was to be included in computing the purchase price under the contract. I agree. In reaching this conclusion, I begin with the earnest money contract and its subject matter.

1. *The Land.* The land involved consisted of parts of three dedicated subdivisions along with two tracts of "raw land" or acreage tracts. Tract one is described as "all of Silent Ridge Subdivision, save and except those two certain lots ..." while tract two is described as "all of Commander's Point Subdivision, save and except lot 19 ... save and except Sunday House Subdivision ..." and tract three described as "lots 43A and 44A, Ralph White Addition." On the other hand, the descriptions for tracts four and five were in terms of acres of land with each description containing a reference to a recorded deed, presumably for a metes and bounds description.

2. *The Contract.* Klein's survey was to locate all streets, roads, and easements. The parties specifically noted, by interlineation *after* the proposed contract was typed, that "land subject to easement will not be deducted from total acreage in calculating the purchase price." By the terms of the contract, especially in view of the nature of the property involved, I believe that streets and roads were considered by the parties to be something separate and apart from easements, with only easements to be included in calculating the acreage involved in the tracts. Therefore, I believe that the acreage within the roadways should not be included in computing the purchase price under the contract.

Of course, the construction of a written instrument is a question of law for the court, and a reviewing court is obligated to give effect to the parties' intent as expressed in the writing, in light of the wording of the instrument and all the surrounding circumstances. *City of Pinehurst v. Spooner Addition Water Company*, 432 S.W.2d 515 (Tex.1968). Further, courts should construe contracts most strictly against the party preparing same. *Republic National Bank v. Northwest National Bank*, 578 S.W.2d 109 (Tex.1978).

In this appeal, the earnest money contract was prepared by Klein's attorney. With its attached exhibits, the contract is some thirteen pages long, and sets out the rights and obligations of the parties in painstaking detail. It would have been a simple matter when stating that the "land subject to easement will not be deducted from total acreage in calculating the purchase price" to say rather "land within the streets and roadways and land subject to easements will not be deducted from total acreage in calculating the purchase price."

3. *Acceptance of the Survey.* Under the contract, Klein was to supply a survey to Wilson, and Wilson was then to have five days to accept or reject the survey. The surveyor was chosen by Klein. Klein had extensive communications with the surveyor before the survey was completed and delivered to Wilson. Klein had ample opportunity to instruct his surveyor as to his particular interpretation of the contract, and could have required the surveyor to

include the acreage within the dedicated streets and roadways in computing the total acreage. However, the survey as delivered to Wilson properly excluded the acreage within the dedicated streets and roadways from the total acreage computation.

4. *Mutuality of Obligation.* When Wilson failed to object to the survey, he thereby became bound by the contract to pay the price based on the survey. Klein in turn became bound to convey the property in exchange for the same price. Without this mutuality of obligation, the proposed earnest money contract would be void and unenforceable. *Stanfield v. Kaufman,* 195 S.W.2d 848 (Tex.Civ.App. 1946, writ dism'd). By construing the contract to obligate both parties to perform upon the acceptance of the survey by Wilson, the mutuality of the contract is thereby preserved. Such a construction, in favor of mutuality, is to be preferred when possible. *Texas Utilities Gas Company v. Barrett,* 460 S.W.2d 409 (Tex.1970).

Having interpreted the contract to provide that the acreage within the dedicated roadways was not to be included in computing the purchase price, I would conclude that the $1,170,000 purchase price was correctly reduced to $1,008,300, and that Wilson correctly tendered that sum to Klein. Accordingly, I would sustain Wilson's first and second points of error.

In its findings of fact and conclusions of law, the district court concluded that $16,-000 would be a reasonable attorney's fee for Wilson's attorney for the trial and appeal to the Court of Appeals of this cause if the appeal was successful. As I would have sustained Wilson's first and second points of error and reversed the judgment of the district court, I would remand the case to the district court for entry of judgment that Wilson is entitled to specific performance of the contract and that Klein be ordered to specifically perform. I would also instruct the district court to award Wilson's attorneys reasonable attorney's fees in the amount of $16,000.