Affirmed and Majority and Dissenting Opinions filed June 29, 2006








Affirmed and Majority and Dissenting Opinions filed June 29,
2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00056-CV

____________

 

JAMES AND PATRICIA CHAPMAN, Appellants

 

V.

 

DOUG AND ELEANOR OLBRICH, Appellees

 



 

On Appeal from the 157th
District Court

Harris County, Texas

Trial Court Cause No. 2002-36479

 



 

D I S S E N T I N G   O P I N I O N

One who seeks specific performance of a real estate
contract must prove that he has diligently and timely performed or tendered
performance of all obligations set forth in the contract.  Graves v. Alders,
132 S.W.3d 12, 18 (Tex. App.CBeaumont 2004, pet. denied).  Because the
Olbrichs did not tender their own performance under the real estate contract at
issue, I respectfully dissent.








It is well established that specific performance is an
equitable remedy.  Bell v. Rudd, 144 Tex. 491, 191 S.W.2d 841, 843
(1946).  Specific performance is not a matter of right, but, instead, a matter
of grace within the court=s discretion.  Roundville Partners,
L.L.C. v. Jones, 118 S.W.3d 73, 79 (Tex. App.CAustin 2003, pet.
denied).  Specific performance may be awarded when a valid contract to purchase
real property is breached by the seller.  Id. at 78B79.  The party
seeking specific performance must demonstrate compliance with all the terms of
the contract in that he has performed, or tendered performance, of all
contractual obligations.  American Apparel Prods., Inc. v. Brabs, Inc.,
880 S.W.2d 267, 269 (Tex. App.CHouston [14th Dist.] 1994, no writ); Texacally
Joint Venture v. King, 719 S.W.2d 652, 653 (Tex. App.CAustin 1986, writ
ref=d n.r.e.). 

Where the contract requires a deed to be delivered upon
tender of the purchase price, the purpose of a tender is two-fold.  Roundville
Partners, 118 S.W.3d at 79; Wilson v. Klein, 715 S.W.2d 814, 821
(Tex. App.CAustin 1986, writ ref=d n.r.e.).  First,
the valid tender of the purchase price invokes the seller=s obligation to
convey and places him default if he fails to do so.  Roundville Partners,
118 S.W.3d at 79; Wilson, 715 S.W.2d at 821.  Second, the tender
satisfies the fundamental prerequisite of specific performance, i.e., that the
buyer demonstrate he has done or offered to do, or is then ready and willing to
do, all the essential and material acts which the contract requires of him.  Roundville
Partners, 118 S.W.3d at 79; Wilson, 715 S.W.2d at 821.  

The Chapmans argue the Olbrichs never tendered their own
performance as required under the contract, but tendered, at best, a
nonconforming performance.  The Olbrichs, on the other hand, argue the Chapmans
had no intention of complying with the contract as evidenced by their sale of
Lot 21 to the Medranos in the face of a recorded notice of lis pendens and the
Olbrichs= pleadings seeking
specific performance.  Thus, the Olbrichs contend any actual tender, under
these circumstances, would have been a useless act.  Accordingly, the Olbrichs
claim they were required only to tender performance in their pleadings.  








A[A] formal tender is excused where a
tender would be a useless and idle ceremony.@  Burford v.
Pounders, 145 Tex. 460, 199 S.W.2d 141, 145 (1947) (citations omitted). 
Thus, the tender of the purchase price Ais excused where
the vendor or seller has put it out of his power to perform, as where he has
conveyed the property . . . to a third person.@  Id.
(citations omitted).  In Burford, a lease gave Burford the right of
refusal of purchase of the land before Beaird sold the property to a third
party.  Beaird nevertheless sold the property to a third party without giving
Burford the right of first refusal.  Id. at 141B42.  Because ABeaird put himself
in an attitude of default, and repudiated the contract by selling to Pounders,@ the supreme court
held Burford was not required to actually tender the purchase price, but,
instead, it was sufficient for Burford to offer in his pleadings to do equity. 
Id. at 145.  

In Henry v. Mr. M Convenience Stores, Inc., we also
considered an award of specific performance in light of the repudiation of a
contract for the sale of property.  543 S.W.2d 393 (Tex. Civ. App.CHouston [14th
Dist.] 1976, writ ref=d n.r..e.).  Mr. M entered into an earnest
money contract with Mrs. Henry for the sale of property Alocated in a
fashionable section of Houston.@  Id. at 394.  Three days prior to
the scheduled closing, Mrs. Henry conveyed the property by way of general
warranty deed to Laigle (another residential property owner in the
neighborhood), as trustee for thirteen named individuals, who were concerned
about the possibility of a commercial enterprise being located in their
neighborhood.  Id.  Laigle then executed a deed of trust and security
agreement in favor of a bank.  Id. at 394B95. 
Simultaneously, with the attempt to fix a lien in favor of the bank, Laigle
executed a second deed of trust in favor of Mrs. Henry.  Id. at 395. 
Laigle also executed and filed of record instruments placing certain
restrictions on the property to limit the use of the property to residential
purpose in direct contravention to the commercial intentions of Mr. M.  Id. 
We found that because the contract between Mrs. Henry and Mr. M had been Aeffectively
repudiated@ by the conveyance of Mrs. Henry=s legal title and
by the placement of the restriction on the property, Mr. M was excused from
formally tendering performance at closing.  Id.  








The Olbrichs contend that after notifying the Chapmans that
they intended to claim specific performance, demanding an immediate closing,
threatening to file a notice of lis pendens, offering to purchase a smaller Lot
21 without the pool, filing a lawsuit, and actually filing of a notice of lis
pendens, any tender would have been an idle act.  Thus, the Olbrichs argue they
were excused from the requirement of actual tender and claim that the
constructive tender in their pleadings was sufficient.  The Olbrichs assert
they were ready, willing, and able to close on June 7, 2002, but there was no
further contact with the Chapmans until July 15.  However, unlike the sellers
in Burford or Henry, when the Olbrichs filed suit on July 22,
2002, the Chapmans still owned the property and did not close with the Medranos
until AAugust the 8th or
9th,@ 2002. Moreover,
by their July 20, 2002 letter, the Olbrichs apparently believed the Chapmans
would be willing to sell Lot 21 to them two days prior to filing this lawsuit. 


The Olbrichs rely on 17090 Parkway, Ltd. v. McDavid
in support of their argument that any actual tender would have been a useless
act or idle ceremony.  80 S.W.3d 252 (Tex. App.CDallas 2002, pet.
denied).  In 17090 Parkway, Ltd., the court of appeals considered the
necessity of an actual tender when the seller of an office building notified
the purchaser in writing that he was terminating the sales contract.  Id.
at 255.  The court of appeals rejected the seller=s argument that
the buyer had to actually tender the full purchase price to be entitled to
specific performance.  Id. at 257.  Noting that Awhere a defendant
openly refuses to perform his part of a contract, a plaintiff need not tender
performance before bringing suit,@ the court
observed that the because seller had terminated the contract and would not have
conveyed the property to the buyer if he had tendered the purchase price,
actual tender would have been a useless act.  Id. at 256B57.  Unlike in 17090
Parkway, the Chapmans never told the Olbrichs they were terminating
the contract; rather, the Chapmans simply stated they believed the contract had
expired.  Indeed, the original closing date was May 25, 2002.  It was extended
to June 9, 2002.  By July 15, 2002, the Chapmans believed the contract was
over.  Further, there was no jury finding that the Chapmans had Aopenly refused to
perform [their] part of the contract.@  








When a party seeks specific performance, he must show that
he has complied with all the terms of the contract in that he has performed, or
tendered performance, of all contractual obligations.  American Apparel
Prods., Inc., 880 S.W.2d at 269; Texacally Joint Venture, 719 S.W.2d
at 653.  This is true even where the other party has indicated that he will not
carry out the contract.  Riley v. Powell, 665 S.W.2d 578, 581 (Tex. App.CFort Worth 1984,
writ ref=d n.r.e.); Hamon
v. Allen, 457 S.W.2d 384, 390 (Tex. Civ. App.CCorpus Christi
1970, no writ); Walker v. Central Freight Lines, Inc., 382 S.W.2d 125,
130 (Tex. Civ. App.CSan Antonio 1964, writ ref=d n.r.e.).  At the
time the Olbrichs filed this suit, the Chapmans still  owned Lot 21.  The
Chapmans may have indicated that they would not sell Lot 21 to the Olbrichs,
but they had not Aput it out of [their] power to perform@ by having already
conveyed to the property to a third party.  Burford, 199 S.W.2d at 145. 


The Olbrichs complain the Chapmans refused to respond to
their July 16 demand to close and their July 20 offer to purchase a smaller Lot
21.  On July 16, 2002, the Olbrichs notified the Chapmans that they were
claiming specific performance and demanded an immediate closing, with the
Olbrichs= thereafter
tendering payment with reimbursement of the cost of removing the pool and
attorney fees.[1] 









The contract provided that the sales price of $20,000 was
payable in cash at closing.  There is nothing in the contract allowing the
purchaser to tender the purchase price after closing.  Nor is there any
provision in the contract allowing for any decrease in the purchase price,
i.e., reimbursement for removal of the encumbrance and attorney fees, as
demanded in the July 16, 2002 letter.  AIt is well settled
in Texas that a party cannot himself disaffirm a part of a contract and at the
same time enforce specific performance on the part of the other party.@  Jones v.
Riley, 471 S.W.2d 650, 657 (Tex. Civ. App.CFort Worth 1971,
writ ref=d n.r.e.).  Thus,
the Olbrichs cannot insist upon the Chapmans= performance under
the contract when they have not only failed to comply with the terms of the
contract by tendering the full purchase price, but when they actually sought to
modify the terms of the contract.  

Relying on McMillan v. Smith, the Olbrichs contend
the July 16, 2002 letter is immaterial to whether they are entitled to specific
performance because the Chapman=s default excuses an actual tender of
performance thereby rendering the unconditional tender in their pleadings
sufficient.  363 S.W.2d 437 (Tex. 1962).  In McMillan, the sellers were
in default when the tender was made because they had failed to show good title
and had failed and refused to cure certain defects.  Id. at 439.  The
buyers pleaded they were ready, willing, and able to carry out the contract,
offered to do complete equity, deposited in the court the amount they regarded
as owing, and offered to deposit any additional amounts as determined by the
court.  Id. at 440.  Observing that the contract was difficult to
construe and that the buyers had tendered the amount they believed in good
faith due under the contract and offered to tender any additional amounts the
court found to be due, the court held, under these circumstances, that failure
to tender the amount actually due did not preclude specific performance once
they had paid the full amount.  Id. at 443.  

McMillan does not stand for the proposition that
the purchaser does not have to tender the purchase price if the seller is in
default under the contract.  Unlike the buyers in McMillan, the Olbrichs
did not tender into the registry of the court any sum due under the contract,
but, instead, demanded an immediate closing and, thereafter, tender an amount
that was clearly less than the amount of the purchase price stated in the
contract.  








A tender is an unconditional offer by the obligor to
pay a sum not less than what is due to the obligee.  Baucum v. Great Am.
Ins. Co. of N.Y., 370 S.W.2d 863, 866 (Tex. 1963).  Thus, any offer by the
obligor that is less than what is due under the contract does not constitute a
tender and it is the obligor=s burden to make sure his tender is of a
sufficient amount.  Wilson, 715 S.W.2d at 821.  Here, the Olbrichs
cannot condition any tender of their performance on removal of the pool,
claiming reimbursement not provided for in the contract.  See id. (A[T]he very
definition of >tender= does not even allow for the possibility
of conditional offers.@) (emphasis in original).[2] 


On July 20, 2002, the Olbrichs proposed to purchase Lot 21,
but reduced in size by 3,325 square feet so that the boundary line would be
moved and the swimming pool would be located solely on the Chapman=s property, for
the original $20,000 purchase price.[3] 
However, the Olbrichs= July 20, 2002 offer to purchase a smaller
portion of Lot 21 poses similar problems for the Olbrichs as the demands found
in the July 16, 2002 letter because they are still attempting to change the
terms of the contract.  Thus, the Olbrichs cannot complain of the Chapmans= refusal to accede
to the July 16 demands or accept the July 20 offer to bolster their position
that making an actual tender of the full purchase price under the contract was
excused because it would have been a useless act under the facts of this case.








Because the Olbrichs failed to establish that they complied
with all terms of the contract by performing, or tendering performance, of all
contractual obligations, they are not entitled to the equitable remedy of
specific performance.  Accordingly, I would reverse the judgment of the trial
court and render judgment that the Olbrichs take nothing on their claims for
specific performance and attorney fees against the Chapmans.  I must,
therefore, respectfully dissent.  

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Majority and Dissenting Opinions filed June 29, 2006.

Panel consists of
Justices Hudson, Frost, and Seymore. 









[1]  The July 16 letter states, in relevant part:

[W]e
intend to claim specific performance for the contract, meaning that we want to
close immediately and thereafter tender performance by contracting for
removal of the encroachment on the subject property, including removal of
fencing, pool demolition and filling of the pool void as specified in Addendum
#1, with reimbursement to us of associated expenses and any attorney fees.  





[2]  In post-submission briefing, the Olbrichs argue the
July 16, 2002 letter with the nonconforming tender is irrelevant because they
abandoned any claimed reductions related to the removal of the pool after the
Medranos purchased the lot.  Even if this were so, it does not change the
result.  Because of the reasons explained above, the Olbrichs were required to
make an actual tender of the $20,000 purchase price prior to filing suit.  





[3]  The Olbrichs=
proposal is contained in a letter dated  July 20, 2002:

According
to the survey, the lot measures 119' in width by 175' in length, which totals
20,825 square feet.  We will agree to resurvey the lot at our expense to take
off 19' in width on the southern side.  This will move the boundary line off
the pool and off of the septic tank, and will add 19 more feet in width to the
lot on which your house sits. . . . Rather than asking you for an adjustment in
price reflecting the reduced size of the lot, we will maintain the original
agreed-to price of $20,000.  

This offer
allows you to receive your agreed-to price for the lot and frees you up to sell
your remaining property without incurring any expense in removing
encroachments.  We will also be absorbing the cost of the new survey and the
loss of square footage without any reduction in price. . . .