# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
NO. 03-08-00404-CV
---

**John Gannon, Inc., Appellant**

**v.**

**Gunnarson Outdoor Advertising, Inc., Appellee**

---
**FROM THE DISTRICT COURT OF HAYS COUNTY, 20TH JUDICIAL DISTRICT**
**NO. 99-0584, HONORABLE RONALD G. CARR, JUDGE PRESIDING**
---

## DISSENTING OPINION

When a contract is ambiguous, its construction is a matter for the fact finder, and summary judgment is inappropriate. *See Reilly v. Rangers Mgmt.*, 727 S.W.2d 527, 529 (Tex. 1987); *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983); *W.W. Laubach Trust v. Georgetown Corp.*, 80 S.W.3d 149, 155 (Tex. App.—Austin 2002, pet. denied).[1] Central to the dispute here is the meaning and interplay between various provisions of the purchase agreement between the parties. Because the provisions at issue are ambiguous, and material fact issues remain as well, I would conclude that the trial court erred in granting summary judgments in favor of appellee Gunnarson

---

[1] *See also* Tex. R. Civ. P. 166a; *Voorhies v. Frankel Family Trust*, No. 05-08-00475-CV, 2009 Tex. App. LEXIS 2116, at *7 (Tex. App.—Dallas Mar. 27, 2009, no pet.) (mem. op.) ("If the contract is ambiguous, its interpretation becomes a fact question, which generally makes summary judgment improper." (citing *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983))); *Davis v. American Bank of Commerce*, No. 03-04-00482-CV, 2005 Tex. App. LEXIS 4902, at *6 (Tex. App.—Austin June 23, 2005, pet. denied) (mem. op.) ("When a contract is ambiguous, summary judgment is inappropriate." (citing *Coker*, 650 S.W.2d at 394)).

Outdoor Advertising, Inc., on appellant John Gannon, Inc.'s breach of contract claim and request for specific performance.  I therefore respectfully dissent.

*The Purchase Agreement*

In August 1998, the parties executed a purchase agreement in which Gunnarson agreed to sell the assets of its outdoor sign advertising business to Gannon in exchange for $7,700,000.  The purchase agreement provides in relevant part:

2.      <u>Due Diligence Period</u>.  Within five (5) days after the date of this Agreement (the "Delivery Date"), Seller shall make available to Purchaser the following items for inspection:

(a)      The Billboards, including free access for measuring, testing, and otherwise examining them.

(b)      All Advertising Contracts, whether cash or trade, regarding the Assets and all information with respect to the respective advertisers.

(c)      All sign, building and electrical Permits relating to the Assets.

(d)      The Leases and all extensions, modifications, and amendments related thereto.

(e)      The Equipment, including all evidence of title, maintenance records, and other documents related thereto.

(f)      The Seller's Ground Leases, including evidence of Seller's title to such properties.

Purchaser shall have twenty (20) days after the Delivery Date to complete its due diligence review; provided, however, that the due diligence period shall be extended for each day after the Delivery Date that Purchaser has not received the information requested in this Paragraph 2.  On the later of twenty (20) days after the Delivery Date or the last day of any extension of the due diligence period, as provided in Paragraph 17(c), Purchaser shall notify Seller, in writing, of its acceptance or rejection of the Assets based upon the results of the due diligence and review of the

2

items listed in Paragraph 2, in Purchaser's sole discretion. If Purchaser rejects the Assets, this Agreement shall be null and void and neither party shall have any further rights, liabilities or obligations pursuant to this Agreement (except as otherwise specifically provided herein, including the return to Purchaser of the Deposit (as herein defined) with any accrued interest).

\* \* \*

5.    <u>Time and Place of Closing</u>. The transaction contemplated by this Agreement shall be consummated (the "Closing") . . . on September 10, 1998, or two (2) days after the date all of the conditions set forth in Paragraphs 12 and 13 hereof shall be satisfied in full, whichever is later, subject, however, to the provisions of Paragraph 17 hereof. . . .

\* \* \*

9.    <u>Purchaser's Representations and Warranties</u>. Purchaser represents and warrants to Seller that: . . .

    (b)    No consent, authorization, order or approval of, or filing or registration with, any governmental authority or other person is required for the execution and delivery by Purchaser of this Agreement and the consummation by Purchaser of the transaction contemplated by this Agreement. . . .

10.    <u>Seller's Representations and Warranties</u>. Seller represents and warrants to Purchaser that: . . .

    (d)    The financial and other information related to the Assets which has been provided to Purchaser and which is attached to this Agreement is true and complete and accurately and completely reflects in accordance with generally accepted accounting principles consistently applied, all revenues generated and collected, and costs of operation, of the Assets during the time periods specified therein. Since the dates of such financial information, there has been no material adverse change in the financial condition or operations of the Assets.

    (e)    Seller has good and marketable title to, and the power to sell, the Assets, free and clear of any liens, claims, encumbrances and security interests. . . .

(f)     Seller has not suffered or, to the best of its knowledge, been threatened with any material adverse change in any relationship with any of their lessors or advertisers.

(g)     Exhibits "B" and "C" attached hereto correctly and completely list all Advertising Contracts and Leases, along with sales commission agreements or other arrangements to which Seller is a party on the date hereof and which relate to the Assets.  No other material contracts exist which relate to the Assets.  The Advertising Contracts and Leases are in full force and binding upon the parties thereto, and they are either freely transferable to Purchaser without the consent or approval required of any other person or entity, or Seller shall have prior to Closing obtained any consents required to accomplish such transfer(s).  Seller shall also provide Purchaser with a lease estoppel certificate executed by the lessors in the form attached hereto as Exhibit "G" for each of the Leases prior to Closing.  No party to any of the foregoing agreements has advised Seller that it will not renew such agreement with Seller, or with Purchaser following the Closing, in accordance with the terms of such agreement.  No default by Seller has occurred thereunder which has not been cured in full and, to the best of Seller's knowledge, no default by the other contracting parties has occurred thereunder which has not been cured in full. . . .

11.     Conduct Prior to the Closing.     Between the date hereof and the Closing Date: . . .

(d)     Seller shall not amend or otherwise modify any agreement or instrument included among the Assets, including, without limitation, any Lease, Advertising Contract or Permit.

* * *

17.     Termination.  This Agreement and the transaction contemplated hereby may be terminated at any time prior to the Closing: (a) by the mutual written consent of Purchaser and Seller; (b) by any of such parties if the Closing shall not have occurred within thirty (30) days of the date of this Agreement a result of the non-fulfillment at such time of any of such party's conditions set forth in Paragraphs 12 or 13, as the case may be; or (c) by Purchaser in accordance with Paragraph 2 hereof.  In the event of such termination, Purchaser will be entitled to an immediate refund of the Deposit with any accrued interest.

4

Paragraph 17 references the "conditions set forth" in paragraphs 12 and 13. Paragraph 12 is titled "Condition to Seller's Obligation" and includes as a condition to Gunnarson's obligation to consummate the transaction that (i) "each and every representation and warranty made by Purchaser shall have been true and correct when made, and shall be true and correct in all material respects as if originally made on and as of the Closing Date," and (ii) "all obligations of Purchaser to be performed hereunder through, and including on, the Closing Date shall have been performed." Paragraph 13 is titled "Conditions to Purchaser's Obligations" and includes the conditions to Gannon's obligation to consummate the transaction.

### *The Controversy*

After disputes between the parties arose over the scope and terms of the agreement, Gunnarson notified Gannon in January 1999 that it was not going to complete the transaction. Although the parties continued to negotiate for a period of time, Gannon filed suit in March 1999 for breach of contract and sought, among its requested relief, full or partial specific performance "with respect to the interest which [Gunnarson] can transfer, with an abatement in the purchase price proportionate to the deficiency or defect." Gannon contended, among its grounds for breach of contract, that Gunnarson failed to comply with specified provisions of the agreement that included: (i) paragraph 2, the due diligence provision, by not providing specified information; (ii) paragraphs 10(d), (e), (f), and (g), provisions addressing Gunnarson's representations and warranties, because the information that was provided was not accurate and the assets were not as represented; and

5

(iii) paragraph 11(d), one of the provisions addressing Gunnarson's conduct prior to closing, because leases were modified after the execution of the agreement "resulting in higher expenses and/or lower income."

***Did the trial court err in granting Gunnarson's motion for summary judgment on Gannon's breach of contract claim?***

After the case had been pending nine years, Gunnarson sought summary judgment pursuant to rule 166a(c) on the ground that both parties voluntarily terminated the contract and pursuant to rule 166a(i) on the ground that Gannon could produce no evidence that Gunnarson breached the contract before it was terminated or that Gannon performed under the contract.[2] *See* Tex. R. Civ. P. 166a(c), (i). Gunnarson's grounds rested upon its contention that the contract terms at issue were unambiguous and the relevant facts undisputed. Gunnarson states in its motion:

---

[2] Gunnarson argues in its motion:

Gannon terminated the contract under paragraph 2 and 17(c) of the Agreement no later than October 15, 1998, when Gannon rejected the Assets. In addition, . . . Gunnarson terminated the contract on January 15, 1999 when he sent Gannon the termination letter.

* * *

Defendant moves for a no evidence summary judgment on the ground that Plaintiff can produce no evidence that Gunnarson breached any contract prior to the contract expiring on its own terms. In other words, even assuming the existence of a valid contract on August 13, 1998 (which Defendant denies), Plaintiff's claim fails as a matter of law because it cannot produce evidence of a breach within the time period of the contract. All of Gannon's allegations concerning breach occur after the contract was terminated. In addition, Gannon's contract claim fails because there is no evidence of Gannon's performance on the contract, a condition precedent to Gunnarson's duty. Specifically, there is no evidence that Gunnarson had funds or financing to pay the Purchase Price, or accepted the Assets.

6

At issue in this motion is Gunnarson's contention that the contract, if it existed at all, was terminated by the parties. . . . Movant seeks the Court's interpretation of unambiguous terms outlining the parties' right to terminate the contract, and apply its interpretation to the specific undisputed and proven facts that resulted in contract termination on at least two separate occasions.

\* \* \*

The merits of this Motion rest on the unambiguous terms found in Paragraphs 2, 5, 12, 13 and 17 of the Agreement.

Gannon responded to the motion, contending that fact issues remain precluding summary judgment and attaching evidence to its response. Its evidence included: (i) the affidavits of John Gannon who primarily negotiated and signed the agreement on behalf of Gannon, Gerald J. Goff who acted as a broker on the transaction, Scott Baxter who worked for Frost Bank and averred concerning Gannon's financing for the transaction, and Thomas Glass who averred as an expert concerning damages; and (ii) the depositions of John Gannon, Gerald Goff, and Denele Gunnarson. During her deposition, Denele Gunnarson testified that she worked for Gunnarson and was involved in providing information to Gannon after the parties executed the purchase agreement. She testified concerning inaccuracies in the information provided to Gannon and that she did not consider the purchase agreement to be binding, including the representations and warranties provisions, because the agreement was a "work in progress."

Because all of Gunnarson's grounds for summary judgment are dependent on its interpretation of the provisions at issue, this Court must determine as a threshold matter whether it should interpret the agreement as a matter of law or whether the provisions at issue are ambiguous and for the fact finder. The rules for construing contracts are well established:

7

> In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. To achieve this objective, courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. . . . Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered.

*Coker*, 650 S.W.2d at 393-394 (emphasis in original) (citations omitted). A contract is ambiguous "when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Id.* at 393. The construction of an ambiguous contract is a question of fact. *See Reilly*, 727 S.W.2d at 529; *Coker*, 650 S.W.2d at 394.

Further, although neither party pleaded ambiguity, this Court may conclude the contract is ambiguous. *See Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993) ("A court may conclude that a contract is ambiguous even in the absence of such a pleading by either party."); *Coker*, 650 S.W.2d at 394-95 (concluding agreement was ambiguous even though both parties asserted property settlement agreement was unambiguous and moved for summary judgment); *W.W. Laubach Trust*, 80 S.W.3d at 155 ("A court may conclude that a contract is ambiguous even in the absence of such a pleading by either party.").

Turning to a review of the provisions at issue, the parties dispute the interplay between the provisions, the meaning of "rejects the Assets" in paragraph 2, and the meaning of subsection (b) in paragraph 17 providing the right to terminate "by any of such parties if the Closing shall not have occurred within thirty (30) days of the date of this Agreement a result of the

8

non-fulfillment at such time of any of such party's conditions set forth in Paragraphs 12 or 13, as the case may be."

Based upon its interpretation of the agreement, Gunnarson contends that (i) Gannon rejected the assets and did not accept the assets within the meaning of paragraph 2 both orally and in writing on several occasions when it raised specific complaints and requested that Gunnarson take actions concerning specified leases and advertising contracts thereby rendering the agreement "null and void," and (ii) Gunnarson properly terminated the agreement pursuant to paragraph 17 because various conditions in paragraphs 12 and 13, including various representations in paragraphs 9 and 10, had not been met within thirty days of the date of the agreement. Gannon counters that (i) it did not reject the assets within the meaning of paragraph 2 by its "voiced concerns about the gaps and discrepancies in the information Gunnarson provided"; and (ii) the references in paragraph 17 to paragraphs 12 and 13 do not mean and were not intended to mean that Gunnarson could terminate the agreement for Gunnarson's own failure to perform its obligations under the agreement after the passage of thirty days of the date of the purchase agreement.

At a minimum, I would conclude that the meaning and interplay of the provisions at issue are uncertain and doubtful, fairly susceptible to more than one meaning, and, therefore, ambiguous.[3] *See Coker*, 650 S.W.2d at 393. Because I would conclude that the provisions of the

_____

[3] I would also conclude that the evidence presented by the parties raises fact issues concerning whether one or both parties voluntarily terminated the agreement by their actions and whether Gunnarson breached the contract when it refused to complete the transaction. *See* Tex. R. Civ. P. 166a. That Gunnarson continued to work to comply with the agreement after its January 1999 letter is inconsistent with its assertion that it terminated the agreement. John Gannon averred:

> The agreement was signed by both parties, and initialed by both parties where changes were made. I submitted the required $25,000 in earnest money to an escrow

9

purchase agreement at issue are ambiguous and for the fact finder, I would conclude that summary judgment on Gannon's breach of contract claim was improper. *See Reilly*, 727 S.W.2d at 529; *Coker*, 650 S.W.2d at 394-95; *W.W. Laubach Trust*, 80 S.W.3d at 155.

In its analysis upholding the trial court's granting of summary judgment, the majority does not address whether or not the agreement is ambiguous but concludes: (1) Gannon failed to raise the factual dispute of whether the due diligence period had expired in its response to summary judgment; (2) by failing to raise the issue, Gannon waived any argument concerning "acceptance" of the assets; and (3) we, therefore, must uphold the trial court whether or not granting summary judgment on this "acceptance" ground was correct. Gunnarson, however, did not assert as a ground for its summary judgment that the due diligence period had expired.

"A motion for summary judgment must itself expressly present the grounds upon which it is made, and must stand or fall on these grounds alone." *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997) (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993)); *see* Tex. R. Civ. P. 166a(c) ("The motion for summary judgment shall state the specific grounds therefor."). In its motion, Gunnarson contended that it was entitled to summary judgment based upon its interpretation of paragraph 2, even though the parties "dispute whether Gunnarson provided all of the material required under the Due Diligence provisions."[4] Gunnarson

---

agent, and performed all of my obligations under the contract. However, Mr. Gunnarson refused to deliver the purchased assets to me, and refused to close the transaction. . . . The sale never occurred.

[4] Gunnarson's motion for summary judgment further states that the "parties disagree and dispute whether one or the other [party] fully performed under the contract. However, none of the disputed facts can support a breach of contract claim once the Court reads, interprets, and construes the Agreement to those facts which are beyond dispute."

10

contended that Gannon rejected the assets—and therefore did not accept them—by its complaints and requests that Gunnarson take certain actions concerning the assets, irrespective of whether or not the due diligence period had expired.[5] In other words, having conceded that the parties disputed Gunnarson's compliance with paragraph 2 to provide information in its motion, Gannon's summary judgment did not expressly present or stand on this ground.[6] *Science Spectrum, Inc.*, 941 S.W.2d at 912.

---

[5] Gunnarson's "acceptance" argument rests upon its interpretation of the sentence in paragraph 2 that states: "If Purchaser rejects the Assets, this Agreement shall be null and void . . . ." By conceding a fact issue concerning its obligation to provide information, Gunnarson could not have been relying upon the proceeding sentences in paragraph 2 because Gannon's obligation to accept or reject the assets is conditioned upon its receipt of the listed information and materials. Those sentences state:

> Purchaser shall have twenty (20) days after the Delivery Date to complete its due diligence review; provided, however, that the due diligence period shall be extended for each day after the Delivery Date that Purchaser has not received the information requested in this Paragraph 2. On the later of twenty (20) days after the Delivery Date or the last day of any extension of the due diligence period, as provided in Paragraph 17(c), Purchaser shall notify Seller, in writing, of its acceptance or rejection of the Assets based upon the results of the due diligence and review of the items listed in Paragraph 2, in Purchaser's sole discretion.

[6] There was summary judgment evidence that Gunnarson failed to provide the contractually required information and materials to Gannon and that the provided information was not accurate. In her deposition, Denele Gunnarson testified that the purchase agreement, including the exhibits, was a "work in progress," and that the exhibits attached to the agreement were not accurate. The evidence also included a letter from counsel for Gannon to counsel for Gunnarson sent in February 1999 detailing inaccuracies in the information that was provided and information that was yet to be provided.

11

***Did the trial court err in granting Gunnarson's motion for summary judgment on Gannon's request for specific performance?***

The majority also upholds the trial court's granting of summary judgment on the remedy of specific performance. Gunnarson filed a separate motion for summary judgment pursuant to rule 166a(c) concerning specific performance, but asserted the same grounds that are dependent upon its interpretation of the purchase agreement. Gannon's response addressed both motions. For the reasons stated above concerning Gunnarson's motion for summary judgment on Gannon's breach of contract claim, I would conclude that the trial court erred in granting summary judgment concerning specific performance.

Gunnarson also sought summary judgment pursuant to rule 166a(i) on the ground that Gannon had no evidence that it was ready, willing and able to pay the purchase price because there was no evidence that Gannon had the cash on hand or a written commitment for financing. *See* Tex. R. Civ. P. 166a(i); *Wilson v. Klein*, 715 S.W.2d 814, 821-22 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (discussing requirements of "tender" as prerequisite to the equitable remedy of specific performance). The evidence, however, presents contradictory accounts of the events leading up to the decision by Gunnarson not to proceed with the transaction and whether Gannon would have been ready, willing and able to complete the transaction had Gunnarson not refused to proceed with the transaction.

Viewing the evidence in the light most favorable to Gannon, as we are required to do by our standard of review, Gannon timely paid the escrow amount and was in compliance with its bank's requirements to secure the financing for the anticipated closing of all or some portion of the assets up until the time Gunnarson advised Gannon that it was not going to complete the transaction.

12

*See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). There also was evidence that Gunnarson did not comply with its obligations under the agreement and that its failure to comply adversely impacted Gannon's efforts to complete its financing. I would conclude that Gannon satisfied its burden under rule 166a(i) to raise a fact issue as to whether it was entitled to the remedy of full or partial specific performance.[7]

Because the contract terms at issue are ambiguous, and material fact issues remain as well, I would reverse the summary judgments granted in favor of Gunnarson Outdoor Advertising, Inc., and remand for further proceedings.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Filed: August 11, 2010

---

[7] The majority concludes that Gannon, as a party depending on third-party financing, had to have a "firm commitment" for financing to be entitled to specific performance. Given the evidence that Gunnarson's failure to perform its contractual obligations prior to closing adversely affected Gannon's financing efforts, I disagree that, on these facts, Gannon was required to show that it had financing in place to preclude summary judgment on the remedy of specific performance. *Compare Luccia v. Ross*, 274 S.W.3d 140, 149-50 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (summary judgment evidence including proof of financing conclusively established tender where "undisputed evidence shows [purchaser] communicated his willingness and ability to perform"); *Roundville Partners v. Jones*, 118 S.W.3d 73, 80 (Tex. App.—Austin 2003, pet. denied) (addressing specific performance and concluding issue of fact whether prevented from tendering performance by actions of opposing party).

13