Tom Tuan NGUYEN, Appellant

v.

George H. WOODLEY and Marcy T. Woodley, Appellees.

No. 14–07–00915–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 30, 2008.

Tex. Ins.Code Ann. § 1575.008 (West Supp. 2008).

Clinard J. Hanby, The Woodlands, Marshall T. Gaspard, Houston, TX, for appellants.

Jefery F. Carson, Allan A. Cease, Sugar Land, TX, for appellees.

Panel consists of Justices FROST, BROWN, and WISE.*

## OPINION

KEN WISE, Justice (Assigned).

Appellant Tom Tuan Nguyen sued appellees George H. Woodley and Marcy T.

---

* The Honorable Ken Wise, Judge of the 152nd District Court of Harris County, sitting by assignment pursuant to Tex. Gov't Code Ann. Sec. 74.003(h) (Vernon 2005).

Woodley for specific performance on an earnest money contract between the parties involving a home listed for sale in Fort Bend County. The Woodleys counterclaimed for damages resulting from Nguyen's alleged breach of the earnest money contract, declaratory relief, and attorney's fees. Both sides submitted motions for summary judgment. The trial court granted the Woodleys' motion for traditional and no-evidence summary judgment, and denied Nguyen's motion.

Nguyen appeals the judgment asserting that the trial court erred in granting the Woodleys' motion for summary judgment on both traditional and no-evidence grounds, and in denying his motion for summary judgment. The Woodleys' one cross-point on appeal is that this court lacks appellate jurisdiction because the trial court's summary-judgment order was interlocutory. We affirm.

## BACKGROUND

On October 3, 2006, appellant Tom Tuan Nguyen entered into an earnest money contract ("the contract") with appellees George H. Woodley and Marcy T. Woodley for the sale of a home in Fort Bend County owned by the Woodleys. Under the terms of the contract, Nguyen deposited $5,000 in earnest money with North American Title Company. The contract also stated that the residence would be sold "as-is," with no repairs to be made by the Woodleys. Finally, the contract provided that closing of the sale should occur "on or before October 21, 2006." The parties scheduled a closing for Friday, October 20.

On or about October 11, Nguyen's third-party financing of the purchase price was approved by mortgage lender Washington Mutual Bank, F.A. ("Washington Mutual"). On October 13, Washington Mutual inspected and appraised the residence, determining that repairs to the roof and interior walls were necessary. On the evening of October 19—the night before the sale was to close—Washington Mutual informed Nguyen, through his real estate broker, that it would require repairs to the roof before funding the loan.

Shortly after learning of the lender's new requirement, Nguyen's broker sent an email to the Woodleys' brokers to inform them of this new development. Nguyen's broker described her conversations with the lender as a continuing process, aimed at closing on the sale. Further, Nguyen's broker asked about extending the closing date to accommodate the roof repairs. Finally, Nguyen's broker communicated that Nguyen and his wife were "ready, serious, and qualified buyers" interested in closing the sale.

Several hours later, though still on the evening of October 19, Nguyen personally signed a memorandum addressed to the Woodleys, forwarded via email by Nguyen's broker to the Woodleys' brokers, stating the following:

Re: Written notice to Seller about Financing Approval

Dear Mr. and Mrs. Woodley,

I would like to notify you that we cannot obtain Financing Approval by now.

I ask you to extend the closing date which I will try to find out as soon as I can.

(signed) Thomas Tuan Nguyen

There was no closing the next day. However, Nguyen's attorney sent a letter to the Woodleys giving notice that Nguyen had allegedly not yet received several items required by the contract—specifically, a commitment of title insurance, a list of standard exceptions to this commitment, and legible copies of the restrictive covenants. Nguyen's attorney requested the Woodleys' written permission for Nguyen to engage workers—at his own expense— to repair the roof as required by the lend-

er. Further, he reiterated that Nguyen's lender would not fund the loan at closing unless the repairs were made. Finally, Nguyen's attorney described his client as "ready, willing and able" to consummate the purchase provided that certain contractual requirements were met and that he be permitted to make the required repairs to the residence.

Meanwhile, Nguyen, through his broker, continued to negotiate with Washington Mutual in order to facilitate funding the loan. On Monday, October 23, Washington Mutual agreed to a "hold back" wherein a portion of the loan amount would be held in escrow in order to cover the cost of repairs after closing of the sale. Nguyen's broker communicated this information to the Woodleys' broker that afternoon. The next morning the Woodleys' broker communicated this development to the Woodleys, suggesting that "if you are willing to go forward" the deal could possibly close on Thursday, October 26.

Later that afternoon—still Tuesday, October 24—Nguyen's broker informed the Woodleys' brokers that Washington Mutual had approved Nguyen's loan status based on a new agreement regarding the repairs. She stated that, "We are now ready to close," suggesting either the next day (Wednesday) or Thursday for closing.

A few hours later, the Woodleys' brokers replied that they had shared the latest developments with Mr. Woodley; however, "[Woodley] considers the prior contract on the subject property to be expired." The brokers stated that Mr. Woodley would accept a new contract for sale of the residence with new terms, including an $28,000 increase in the sale price, $10,000 additional earnest money to be non-refundable, closing on or before November 3, and Nguyen escrowing his own funds for the repairs at closing. Further, the Woodleys' brokers stated that the residence was "active on the MLS," and strongly suggested that if Nguyen remained interested in the property he should prepare a new contract for sale reflecting the new terms.

On Wednesday, October 25, Washington Mutual sent its closing instructions along with its check for the purchase price to the title company; however, the sale did not close.

Nguyen filed suit against the Woodleys in November 2006, seeking specific performance on the contract to complete the sale, as well as attorney's fees. In response, the Woodleys counter-sued Nguyen in January 2007, seeking money damages based on Nguyen's alleged breach of the contract, attorney's fees, and declaratory relief that both the contract and Nguyen's Affidavit of Interest in Real Property[1] were invalid. In April 2007, the Woodleys filed a motion for traditional and no-evidence summary judgment. That same month, Nguyen filed his own motion for summary judgment.

On September 11, 2007, the trial court issued an order entitled "Final Summary Judgment," granting the Woodleys' motion for both traditional and no-evidence summary judgment, and denying Nguyen's motion. The order awarded the Woodleys $20,690.13 as attorney's fees; $53,458.20 "representing mortgage, electric, insurance, yard maintenance and property taxes incurred from November 2006 through July 2007"; $10,000 for loss of salvage value of kitchen appliances; attorney's fees contingent upon potential appeals; and pre– and post-judgment interest. It

1. The Woodleys alleged that Nguyen filed an Affidavit of Interest in Real Property on the home in the Fort Bend County real property records, resulting in a cloud on their title. Consequently, they allege that they were unable to sell the home to another buyer and were forced to pay for the mortgage, maintenance, and property taxes on the residence.

further ordered Nguyen to pay the Woodleys $5,939.80 per month commencing August 1, 2007 and on the first of each month thereafter until the judgment is paid in full.

In October 2007, the Woodleys filed a motion for judgment nunc pro tunc, requesting that the trial court modify its September 11 order by adding this language: "IT IS THEREFORE ORDERED that Defendants, George H. Woodley, Jr. and Marcy T. Woodley, Motion for Traditional Summary Judgement and No Evidence Summary Judgement is GRANTED in its entirety, and that Plaintiff's Motion for summary judgement is DENIED, and that all of the claims and causes of action asserted by Plaintiff, Tom Tuan Nguyen, against said Defendants are hereby dismissed with prejudice." On October 9, the trial court granted this motion—save for its deletion of the phrase "with prejudice."

Later that same month, Nguyen filed a motion to reconsider the summary judgment or, alternatively, for new trial. In December 2007, the Woodleys also filed a motion to reconsider.[2] On December 10, 2007, the trial court issued a second "Final Summary Judgment Order." This order— as prepared by the Woodleys—would have granted all the relief present in the September 11 order. However, Judge Thomas R. Culver, in signing the order, specifically drew a line through the language awarding any damages to the Woodleys other than attorney's fees, and then signed the page "deleted TR Culver Judge." Further, the order provided, "This judgment finally disposes of all claims and all parties and is appealable."[3] Nguyen subsequently filed a timely notice of appeal.

In February 2008, the Woodleys filed a motion to dismiss for want of jurisdiction with this court. In their motion, the Woodleys asserted that the trial court's December 10, 2007 order was not a final, appealable order, and so this court lacked jurisdiction to hear Nguyen's appeal. After reviewing Nguyen's response, this court denied the motion on March 6.

On February 28, the Woodleys filed a motion for judgment nunc pro tunc in the trial court. Specifically, the Woodleys asked the trial court to change the title of its order from "Final Summary Judgment" to "Partial Summary Judgment," and to delete the sentence, "This judgment finally disposes of all claims and all parties and is appealable." The trial court granted this motion on March 3, signing a "Partial Summary Judgment Nunc Pro Tunc" order that mirrored its December 10, 2007 order in all respects except for deletion of the "finally disposes" language. On March 17, this court made a *sua sponte* request for briefing from both parties on the question of this court's jurisdiction. Both parties filed responses with the court. On April 23, the Woodleys filed with this court a second motion to dismiss for want of jurisdiction. On May 29, this court denied this motion.

## ANALYSIS

### I. Jurisdiction

 Before we can address the merits of this case, we must first consider the Woodleys' cross-point regarding this court's earlier dismissals of two motions to dismiss for want of jurisdiction. Appellate jurisdiction is fundamental, and, if the

---

2. The Woodleys' motion to reconsider makes reference to a November 21, 2007 hearing on Nguyen's motion to reconsider which resulted in a modification to the September 11, 2007 final summary judgment order. However, there is no other reference to either this hearing, or any resulting orders, in the appellate record.

3. This language was not interlineated by Judge Culver, but was already in the proposed order submitted by the Woodleys.

present case is an appeal over which we have no jurisdiction, then the appeal must be dismissed. *Matthews v. Cohen,* 807 S.W.2d 605, 606 (Tex.App.-Houston [14th Dist.] 1991, no writ). If the present case is an appeal over which we have no jurisdiction, then the appeal must be dismissed. *Id.*

 As a general rule, an appeal may be taken only from a final judgment. *Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 195 (Tex.2001). A judgment issued without a conventional trial is final only if it either actually disposes of all claims and parties before the court, or it states with unmistakable clarity that it is a final judgment. *See id.* at 200. In the case at bar, the December 10, 2007 "Final Summary Judgment" is a final, appealable judgment expressly disposes of all claims and all parties, stating with unmistakable clarity that it is a final judgment, i.e., it expressly states that it disposes of all parties and claims and is final and appealable. *See id.* at 206. However, the Woodleys argue that this apparent finality was the result of clerical error later corrected by the judgment nunc pro tunc of March 3, 2008, which modified the December 10 order from a "Final Summary Judgment" to a "Partial Summary Judgment." If valid, this revision would render the order interlocutory in nature, depriving this court of jurisdiction over the appeal. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 51.012, 51.014 (Vernon 2008).

In *Inglish v. Union State Bank,* the Texas Supreme Court held that a judgment nunc pro tunc could not modify a final, appealable summary-judgment order into an interlocutory order. 945 S.W.2d 810, 811 (Tex.1997). While the Court's holding in *Inglish* was an application of the prior *Mafrige* standard for determining final appealable summary-judgment orders, *see id.,* the *Inglish* holding remains valid under the current standard as stated in *Lehmann v. Har–Con Corporation*[4] as the order at issue in *Inglish* purported to be final by stating that plaintiff Inglish take nothing in his case against Union State Bank, the only adverse party in the suit. *See id.* (summary judgment order, entered in response to motion attacking only three of plaintiff's six claims, was final and appealable when reciting that no genuine issues of material fact remained, directing that plaintiff take nothing, and, thus, purporting to be final); *see also Lehmann,* 39 S.W.3d at 205 (language that plaintiff take nothing by his claims, or that case is dismissed, shows finality if there are no other claims by other parties).

The trial court's December 10, 2007 summary judgment order was a final, appealable judgment because it expressly disposed of all claims and all parties. *See Lehmann,* 39 S.W.3d at 206. The trial court's plenary power over this judgment expired on January 9, 2008. *See* Tex.R. Civ. Proc. 329b. The trial court could not use a judgment nunc pro tunc to change its December 10 summary judgment from a final judgment into an interlocutory order on March 3, 2008, after the trial court had lost plenary power. *See Inglish,* 945 S.W.2d at 811. Consequently, the trial

---

4. "An order does not dispose of all claims and all parties merely because it is entitled 'final', or because the word 'final' appears elsewhere in the order, or even because it awards costs. Nor does an order completely dispose of a case merely because it states that it is appealable, since even interlocutory orders may sometimes be appealable. Rather, there must be some other clear indication that the trial court intended the order to completely dispose of the entire case." *Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 205 (Tex.2001). The *Lehmann* court went on to say, "A statement like, 'This judgment finally disposes of all parties and all claims and is appealable,' would leave no doubt about the court's intention." *Id.* at 206.

court's December 10, 2007 summary judgment remains a final, appealable judgment from which Nguyen has timely appealed. *See Lehmann*, 39 S.W.3d at 195. Therefore, this court has appellate jurisdiction, and we overrule the Woodley's cross-point on appeal.

## II. Summary Judgment

Nguyen appeals the trial court's final summary judgment on the basis that the trial court erred in granting the Woodleys' motion for both traditional and no-evidence summary judgment, and in denying Nguyen's motion for summary judgement.

### A. Standard of Review

We review the trial court's grant of summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156–57 (Tex.2004). In reviewing a traditional summary judgment, we consider whether the successful movant at the trial level carried the burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). To be entitled to a traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). If the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000).

In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence of probative force to raise a genuine issue of fact as to the essential elements attacked in the no-evidence grounds. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex.2002). A no-evidence summary judgment must be granted if the party opposing the motion does not respond with summary-judgment evidence that raises a genuine issue of material fact. *See Arguelles v. Kellogg Brown & Root, Inc.*, 222 S.W.3d 714, 723 (Tex.App.-Houston [14th Dist.] 2007, no pet.). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755–56 (Tex.2007).

When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, the reviewing court considers the summary-judgment evidence presented by both sides, determines all questions presented, and renders the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005).

### B. Woodleys' Motion for Summary Judgment

■ Under his first issue, Nguyen asserts that the trial court erred in granting the Woodleys' motion for summary judgment. Nguyen argues that the trial court erred in granting the Woodleys' traditional motion for summary judgment because the Woodleys failed to prove as matter of law that there was no genuine issue of material fact to at least one element of Nguyen's specific performance claim.

■ Nguyen filed suit for specific performance of the October 3, 2006 earnest money contract to buy the Woodleys' residence. Among other things, to be entitled to specific enforcement of a contract, a party must show that the contract in question is valid and enforceable. *See Abraham Inv. Co. v. Payne Ranch, Inc.,* 968 S.W.2d 518, 527 (Tex.App.-Amarillo 1998, pet. denied). The Third Party Financing Condition Addendum ("the addendum") to the contract states:

> If Buyer cannot obtain Financing Approval, Buyer may give written notice to Seller within 20 days after the effective date of this contract and this contract *will* terminate and the earnest money will be refunded to Buyer.

(emphasis added).

The record reflects that on October 19, 2006, Nguyen sent the Woodleys a "Written notice to Seller about Financing Approval" by email, in which Nguyen stated that "we cannot obtain Financing Approval by now"—invoking almost verbatim the above language of the addendum describing a notice by Buyer that terminates the contract. As this notice was given by Nguyen within twenty days after the contract became effective, the addendum mandates that this notice effectively and immediately terminated the contract. On appeal, Nguyen argues that the contract was not conditioned on financing approval, and that Nguyen obtained financing approval by the closing deadline.

Nguyen's first argument is contrary to the language of the contract itself which provides in paragraph 4.A.(2)(a) (under the heading "Financing Approval"), "This contract is subject to Buyer being approved for the financing described in the attached Third Party Financing Condition Addendum." This is an elective subparagraph, and the box next to this language is checked to indicate inclusion of this subsection as a material term to the contract. Consequently, the contract was conditioned on financing approval according to its express terms.

Nguyen's second argument that he obtained financing approval by the closing deadline is both inaccurate and irrelevant. First and foremost, the addendum—integrated into the body of the contract by paragraph 22—states that the contract *will* terminate upon notice of the Buyer's inability to secure Financing Approval for the sale. Again, Nguyen's notice of his inability to secure financing of the sale—given on the night before the scheduled closing—automatically terminated the contract according to its terms. Through this email, Nguyen exercised his option to unilaterally terminate the contract and thereby protect his earnest money.

Nguyen also argues that the condition of the property is not an aspect of "financing approval" as defined by the contract. However, even if this were so, that would not stop Nguyen from giving notice that he cannot obtain Financing Approval. Because Nguyen did so, the contract terminated by its own terms on October 19, it was not a valid contract to be enforced after that date.[5] *See In re Neutral Posture, Inc.,* 135 S.W.3d 725, 730 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (contract provision was unenforceable after it expired according to its own terms). Consequently, its terms may not be specifically enforced. *See Abraham Inv. Co.,* 968 S.W.2d at 527. Because the Woodleys

---

5. Nguyen asserts that this email was not a definite and unequivocal manifestation of intention not to perform that would rise to the level of a repudiation. However, the issue here is whether the email is a notice that terminates the contract under the Third Party Financing Condition Addendum, not whether the email satisfies the requirements for a common law repudiation of the contract.

demonstrated that there is no genuine issue of a material fact related to an essential element of Nguyen's claim and that they are entitled to judgment as a matter of law, the trial court correctly granted the Woodleys' traditional motion for summary judgment.[6]

### C. The Woodleys' Award of Attorney's Fees

Under his first issue, Nguyen also asserts that the trial court erred by awarding attorney's fees to the Woodleys because this award was based on the right under the contract of a "prevailing party" to recover its attorney's fees and because the Woodleys are no longer prevailing parties if this court reverses the summary judgment in favor of the Woodleys. Because we do not reverse the trial court's summary judgment, this argument lacks merit. Accordingly, Nguyen's first issue on appeal is overruled.

### D. Nguyen's Motion for Summary Judgment

In his second issue, Nguyen argues that the trial court erred in denying his motion for summary judgment against the Woodleys in his suit for specific performance. As we have discussed *supra*, the contract terminated on October 19, 2008, making it impossible for Nguyen to prove the elements of specific performance as a matter of law. *See Abraham Inv. Co.*, 968 S.W.2d at 527. Consequently, the trial court did not err in denying Nguyen's motion for summary judgment. Nguyen's second issue is overruled.

### CONCLUSION

For the reasons stated above, we affirm the trial court's December 10, 2007 judgment granting summary judgment to the Woodleys, denying summary judgment to Nguyen, and awarding attorney's fees to the Woodleys.

---

6. Nguyen asserts that this ground regarding the termination of the contract based on the October 19, 2006 email, was not contained in the Woodleys motion for summary judgment. However, this ground was contained in the Woodleys' supplement to their motion for summary judgment, which the trial court granted them leave to file.