

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00014-CV
_____

THOMAS C. CATE AND PATSY CATE, Appellants

V.

MICHAEL J. WOODS, Appellee

On Appeal from the 6th Judicial District Court
Fannin County, Texas
Trial Court No. 37571

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

This appeal arises from the grant of specific performance and award of damages where no enforceable contract existed. We reverse the trial court's judgment and render judgment that appellee take nothing.

## I. Factual Background

In May of 2002, Thomas C. Cate and Patsy Cate signed a contract to sell their farm and ranch land, consisting of two tracts of land, to Michael J. Woods on approval of third-party financing. Closing was to occur July 31, 2002. The contract stated it would terminate if successful financing was not obtained by that closing date. It is undisputed that Woods failed to obtain financing to purchase both tracts.

Nevertheless, the Cates provided partial seller financing and allowed Woods to purchase half of their farm and ranch land, hereinafter called property A. In order to convey property A, the parties entered into a separate contract for that tract alone. Although Tom "discussed the sale of the property for a number of years," no written agreement was ever made to sell the second half of their land, hereinafter referred to as property B.[1] At one point, Tom proposed to sell property B only if

---

[1] Woods created a separate proposed contract for the sale of property B providing for seller financing. It was not returned to him, and he did not see a signed copy of it until it was produced during discovery. Tom testified he made changes to the proposed contract, but never delivered this contract due to conflicts with Woods. The trial court did not find there was a separate written contract for sale with regard to property B. In any event, this unexecuted contract for sale was contingent upon closing, at which time Woods was to pay $10,000.00. The closing never occurred, and the proposed contract terminated.

2

it was seller financed. The Cates required seller financing for tax purposes and because Patsy needed a monthly income after retirement. Woods became eligible for a United States Department of Agriculture (USDA) farm ownership loan September 14, 2004. Because the USDA did not receive any sales contract for property B, the loan application was never processed and the money was never received.

While Tom was still considering the sale, he allowed Woods onto property B in 2004 without Patsy's knowledge or consent. Tom said to Woods "the keys are yours, the gates are open, I've already moved the calves. . . . go to town with it." Woods moved his cattle from property A onto property B, planted hay, and spent money on additional cattle, fertilizer, a corral, and equipment to carry out farming and ranching activities. No money was ever paid to the Cates for Woods' use of property B.

Patsy testified she never made any agreement and did not want to sell property B. She found out Woods was using the property and "had a heated discussion" with Tom. Woods spoke with Tom about selling the property "a minimum of at least ten times" after receiving the keys to property B. Patsy also claimed that Woods had several discussions with her to convince her to sell the property. Woods admitted "they still never came back with the contract." He testified that in January of 2005, "Mr. Cate and I had had dinner that day, in January, and talking about he was trying to get his wife to be more friendly and change her position to go ahead and finish the deal." That same month, Patsy called Woods and told him they were not going to sell the property.

3

In September of that year, after several attempts to remove Woods from the property, Tom moved the cattle to property A, plowed up the grass, and placed locks and chains on the property B gate. On August 24, 2006, Woods filed suit for specific performance based on the original 2002 contract for sale, negligence, trespass, and fraud in "their intent to allow [Woods] to purchase" property B.

## II.     Procedural History

The Cates filed a motion for summary judgment arguing that specific performance was unavailable because the original contract was terminated and there was no written contract for sale of property B. They also asserted that the statute of limitations barred suit arising from the original contract and that the statute of frauds prevented any alleged oral contract from being enforceable. Summary judgment was denied.

After a bench trial, the trial court granted specific performance in favor of Woods, provided that he pay the purchase price for property B, and also awarded him $22,000.00 in actual damages, $20,000.00 in punitive damages for the Cates' trespass into property B, $20,000.00 in attorney's fees, and costs. The following conclusions of law, derived from the trial court's findings of fact, are material to disposition of this appeal:

1.      The parties entered a valid and binding agreement dated May 21, 2002, on the entire acreage . . . .

2.      The deadline dates in the above-referenced contract were modified by the actions and inactions of the parties upon which the Plaintiff reasonably relied to his detriment.

4

3.      Plaintiff tendered all conditions precedent to the contract and tendered to the Defendants the agreed upon consideration.

. . . .

5.      Defendants gave Plaintiff permission to occupy, use, control, maintain, manage and possess [property B] on or about July 2004.

6.      Defendants falsely represented that they would convey all of their right, title and interests in [property B] to Plaintiff.

. . . .

8.      The Defendants [sic] conduct . . . constituted false and material misrepresentations of material facts.

. . . .

12.     Plaintiff reasonably and detrimentally relied upon Defendants [sic] representations and misrepresentations.

Among other points of error highlighted on appeal, the Cates argue the trial court erred in granting specific performance on the May 2002 contract because it was terminated. They also argue that no oral contract was found to exist. We agree.[2]

## III.    Standard of Review

"Findings of fact in a case tried to the court have the same force and dignity as the findings made by a jury in its verdict." *Ayers v. Mitchell*, 167 S.W.3d 924, 927 (Tex. App.—Texarkana 2005, no pet.). We are bound by them unless the contrary is established as a matter of law, or if no evidence supports the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). Because we defer to a trial court's resolution of factual issues, we do not substitute our findings of fact as long as evidence in the record is sufficient to sustain the trial court's findings. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Ayers*, 167 S.W.3d at 928.

---

[2]Because our resolution of these two issues is dispositive of this appeal, we do not need to address the Cates' remaining points of error.

"On the other hand, since a trial court has no discretion in determining what the law is or applying the law to the facts, a trial court's conclusions of law are reviewed de novo." *Duddlesten v. Klemm*, No. 06-08-00106-CV, 2009 WL 635153, at *3 (Tex. App.—Texarkana Mar. 13, 2009, no pet.) (mem. op); *Ayers*, 167 S.W.3d at 928; *see Walker*, 827 S.W.2d at 841.

## IV.     Trial Court Erred in Granting Specific Performance Where No Contract Existed

Specific performance is an equitable remedy that can be awarded upon showing a breach of contract. *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied) (citing *Kress v. Soules*, 152 Tex. 595, 261 S.W.2d 703, 704 (1953)). Thus, "[i]n pursuing an action for specific performance, the first question is whether there is an enforceable contract to be performed." *Lynx Exploration & Prod. Co. v. 4-Sight Operating Co.*, 891 S.W.2d 785, 787 (Tex. App.—Texarkana 1995, writ denied). To be enforceable and comply with the statute of frauds, a contract for the sale of real property must be in writing and signed by the person to be charged with the agreement. TEX. BUS. & COM. CODE ANN. § 26.01 (Vernon 2009). Before a court can order specific performance of a contract for the sale of land, there must be a written agreement expressing the essential terms of the contract with reasonable certainty. *Chambers v. Pruitt*, 241 S.W.3d 679, 687 (Tex. App.—Dallas 2007, no pet.); *Joplin v. Nystel*, 212 S.W.2d 869 (Tex. Civ. App.—Amarillo 1948, no writ) ("A court will not decree specific performance of contract for sale of land nor entertain suit to recover damages for breach thereof, unless a written agreement or a memorandum required by the Statute of Frauds expresses the essential terms of the contract with such certainty and

6

clarity that it may be understood without recourse to parole [sic] evidence of the intentions of the parties."). Also, it is "a general rule of equity jurisprudence in Texas that a party must show that he has complied with his obligations under the contract to be entitled to specific performance." *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 594 (Tex. 2008).

There was no separate written contract for the sale of property B. In ordering specific performance, the trial court relied on the 2002 contract for sale, which was clearly contingent upon Woods obtaining third-party financing for the value of both properties A and B.[3] A condition precedent is one that must be performed before "a right can accrue to enforce an obligation." *Perl v. Patrizi*, 20 S.W.3d 76, 80 (Tex. App.—Texarkana 2000, pet. denied) (citing *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992)). The 2002 original contract stated, "If financing . . . or assumption approval is not obtained within 65 days after the effective date hereof, this contract will terminate . . . ." "The use of the term 'if' connotes a condition precedent that conditions performance rather than a covenant or promise." *Shin-Con Dev. Corp. v. I.P. Invs., Ltd.*, 270 S.W.3d 759, 766–67 (Tex. App.—Dallas 2008, pet. denied); *Knox v. Townes*, 470 S.W.2d 290, 291 (Tex. Civ. App.—Waco 1971, no writ) (a contract contingent on financing contains a condition precedent).

Since financing was not obtained by the closing date, the contract terminated by its own terms. *See White v. Hughs*, 867 S.W.2d 846, 851 (Tex. App.—Texarkana 1993, no writ) ("When entering into a contract for the purchase of realty, the parties may provide for repossession of the

---

[3]The trial court stated, "The May 21, 2002 contract as modified will be enforced to permit Plaintiff to complete the purchase of [property B]."

7

property or cancellation of the sale upon breach."). This termination and abandonment of the original contract was further evidenced by the parties' execution of a separate written contract for sale of property A at a later date. The trial court erred as a matter of law in finding Woods completed all conditions precedent, and in finding the 2002 terminated contract valid after its termination.

The trial court found that the written contract entered May 21, 2002, was a valid and binding agreement for the sale of both tracts of land and "will be enforced to permit Plaintiff to complete the purchase of [property B]." Even though Woods pled alternatively that an oral contract was entered into by the parties, at trial Woods asserted that he was entitled to specific performance based on a written contract he prepared for the last 100 acres and sent to the Cates, but which was never returned. Woods did not present evidence that the parties had entered a separate oral contract, and the trial court made no finding that the parties entered an oral contract. Here, the court entered specific findings of fact and conclusions of law, so there is no implied finding of an oral agreement. If findings of fact and conclusions of law are not requested or filed, the appellate court presumes the trial court found all fact questions in support of its judgment. *IKB Indus. v. Pro-Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997).

Further, Woods' argument to this Court is premised on the trial court's findings of a "valid and binding written contract" which was modified, as to deadlines, by the actions and inactions of the parties. Therefore, since there is no finding that an oral contract to sell property B existed, the

8

argument that an oral agreement may be enforced without compliance with the statute of frauds on the doctrine of partial performance is inapplicable.

At most, the finding of the trial court was that the original written contract was to be enforced because the parties by their "actions and inactions" modified the deadlines in the contract. But there is no finding that an entirely new oral contract was entered that could be enforced; neither did the trial court find that the parties had orally agreed to change the original purchase price. The purchase price of the original contract for both tracts was $269,500.00, or approximately $1,300.00 per acre, whereas the judgment enforces the contract at $1,000.00 per acre. The only modification that the trial court found pertained to "deadlines" in the original contract. Even if the plaintiff could establish all elements to specifically enforce an oral contract, that would be inapplicable here as the judgment attempted to enforce the original written contract, but on terms not found in that contract.

## V.     The Trial Court Erred in Finding Fraud and Trespass

Next, the trial court found that the Cates defrauded Woods by "falsely represent[ing] that they would convey all of their right, title and interest in" property B. The court concluded that Woods reasonably acted upon the misrepresentations contained within his petitions. When fraud claims arise out of an alleged contract which is unenforceable under the statute of frauds, the statute of frauds bars the fraud claims as well as the contract claims. *Weakly v. East*, 900 S.W.2d 755, 758–59 (Tex. App.—Corpus Christi 1995, writ denied) (citing *Nagle v. Nagle*, 633 S.W.2d 796, 800-01 (Tex. 1982) (enforcing a promise to convey land despite the statute of frauds would render the statute

9

meaningless)); *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001)) ("If in the face of the Statute of Frauds, we permit [plaintiff's] fraud claim to the extent he seeks to recover the benefit of the unenforceable bargain, we deprive the Statute of any effect."). Because there was no enforceable contract to convey land, the trial court erred as a matter of law in finding the Cates defrauded Woods.

Next, there was a finding that Cates trespassed onto Woods' property when moving Woods' cattle from property B to property A. Trespass occurs when one enters another's land without consent. *Cain v. Rust Indus. Cleaning Servs.*, 969 S.W.2d 464, 470 (Tex. App.—Texarkana 1998, pet. denied). Because Woods failed to establish ownership of property B, the trial court erred in finding trespass.

## VI.     Woods Was Not Entitled to Recover Monetary Damages

"It is well established in Texas that no recovery is allowed unless liability has been established." *Fire Ins. Exchange v. Sullivan*, 192 S.W.3d 99, 107 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (quoting *Turner v. Lone Star Indus., Inc.*, 733 S.W.2d 242, 246 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.)); *see also Schindler v. Austwell Farmers Coop.*, 841 S.W.2d 853, 854 (Tex. 1992). Damage findings in the absence of liability findings are immaterial. *Fire Ins. Exchange*, 192 S.W.3d at 107; *Basic Capital Mgmt. v. Dynex Commercial, Inc.*, 254 S.W.3d 508, 513 (Tex. App.—Dallas 2008, no pet.). Because we find Woods was not entitled to prevail on any of his alleged causes of action, he was not entitled to consequential or

punitive damages or attorney's fees.

## VII.    Conclusion

For these reasons, we reverse the trial court's judgment and render judgment that Woods take nothing.

Jack Carter
Justice

Date Submitted:    August 31, 2009
Date Decided:      October 21, 2009

11